COMMONWEALTH OF MASSACHUSETTS,

      Plaintiff,

             v.

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES; KATHLEEN
SEBELIUS, in her official capacity as the Secretary
of the United States Department of Health and
Human Services; UNITED STATES
DEPARTMENT OF VETERANS AFFAIRS; ERIC
K. SHINSEKI, in his official capacity as the
Secretary of the United States Department of
Veterans Affairs; and the UNITED STATES OF
AMERICA,

      Defendants.

**Civil Action No. _____**

# COMPLAINT

## INTRODUCTION

In 2004, the Commonwealth of Massachusetts became the first state to end the exclusion of same-sex couples from marriage. Since that time, more than 16,000 qualified and committed same-sex couples have married in Massachusetts and the security and stability of families has been strengthened in important ways throughout the state. Despite these developments, same-sex couples in Massachusetts are still denied essential rights and protections because the federal Defense of Marriage Act ("DOMA") interferes with the Commonwealth's sovereign authority to define and regulate marriage. As applied to the Commonwealth and its residents, DOMA constitutes an overreaching and discriminatory federal law.

In this case, the Commonwealth challenges the constitutionality of Section 3 of DOMA, codified at 1 U.S.C. § 7. Section 3 of DOMA creates an unprecedented federal definition of

marriage limited to a union between one man and one woman. Congress's decision to enact a federal definition of marriage rejected the long-standing practice of deferring to each state's definition of marriage and contravened the constitutional designation of exclusive authority to the states. From its founding until DOMA was enacted in 1996, the federal government recognized that defining marital status was the exclusive prerogative of the states and an essential aspect of each state's sovereignty, and consistently deferred to state definitions when the marital status of an individual was used as a marker of eligibility for rights or protections under federal law.

Now, because of Section 3 of DOMA, married individuals in same-sex relationships are both denied access to critically important rights and benefits and not held to the same obligations and responsibilities arising out of marriage or based on marital status. DOMA precludes same-sex spouses from a wide range of important protections that directly affect them and their families, including federal income tax credits, employment and retirement benefits, health insurance coverage, and Social Security payments. In enacting DOMA, Congress overstepped its authority, undermined states' efforts to recognize marriages between same-sex couples, and codified an animus towards gay and lesbian people.

Section 3 of DOMA applies to all federal laws retrospectively and prospectively. In so doing, it affects the Commonwealth in significant ways. First, DOMA interferes with the Commonwealth's exclusive authority to determine and regulate the marital status of its citizens. Although the Commonwealth views all married persons identically, Section 3 of DOMA creates two distinct classes of married persons in Massachusetts by denying hundreds of rights and protections to married individuals in same-sex relationships. Second, Section 3 of DOMA imposes conditions on the Commonwealth's participation in certain federally funded programs

that require the Commonwealth to disregard marriages validly solemnized under Massachusetts law. DOMA's sweeping scope exceeds the powers granted to Congress and violates the United States Constitution.

The Commonwealth seeks declaratory and injunctive relief for the narrow but critical purpose of enabling it to define marriage within its own boundaries. This action does not address the application of DOMA in states that do not recognize marriages between same-sex couples. It does, however, seek to remedy the fundamental unfairness that DOMA causes to Massachusetts and its residents by denying those residents equal treatment under the law.

## NATURE OF THE ACTION

1.      The Commonwealth, by and through its Attorney General Martha Coakley, brings this action seeking a declaratory judgment that Section 3 of DOMA, codified at 1 U.S.C. § 7, is unconstitutional as well as injunctive relief prohibiting the enforcement of Section 3 against Massachusetts.[1]

2.      Section 3 of DOMA exceeds congressional authority and interferes with the Commonwealth's sovereign authority to define marriage, in violation of the Tenth Amendment to the United States Constitution, Congress's Article I powers, and the Constitution's principles of federalism. Due to the extensive scope of federal rights, obligations, and protections linked to marital status, Section 3 of DOMA creates two separate and unequal categories of married couples in the Commonwealth. Despite the Commonwealth's recognition of only one category

---

[1] The Commonwealth's lawsuit does not challenge Section 2 of DOMA, codified at 28 U.S.C. § 1738C, which provides that states shall not be required to recognize marriages between individuals of the same sex that are validly solemnized in other states. This lawsuit is, instead, limited to the impact of Section 3 of DOMA within the borders of the Commonwealth. Accordingly, the Commonwealth does not assert any claims regarding the decision of other states to define marriage as a union between one man and one woman.

of married persons, Section 3 of DOMA changes the meaning of marriage in Massachusetts and commandeers state employees into implementing federal policy that contradicts Massachusetts law and violates the United States Constitution.  This usurps the Commonwealth's authority and contravenes constitutionally mandated principles of federalism.

3.	In addition, Section 3 of DOMA, through its application to programs administered by the Commonwealth and funded by the federal government, requires the Commonwealth to treat married individuals in same-sex relationships differently from married individuals in different-sex relationships.  When the Commonwealth receives federal funding for various programs, federal law requires the Commonwealth to implement DOMA's disregard of valid marriages between same-sex couples.  Section 3 of DOMA requires the Commonwealth to treat married individuals in same-sex relationships as single, imposing an impermissible condition on the Commonwealth in violation of the Spending Clause of Article I of the United States Constitution.

4.	This case is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

## PARTIES

5.	The Commonwealth brings this action in its own capacity as a sovereign state. The Commonwealth has a significant interest in treating its residents equally as required by its constitution and laws and as further required by the United States Constitution.  The Commonwealth also has an interest in maintaining its sovereign authority to define the marital status of its citizens, as well as an interest in not being conscripted as an agent implementing federal policy that conflicts with Massachusetts law and violates the United States Constitution.

4

The Commonwealth further has an interest in not being subject to unconstitutional conditions in connection with its receipt of federal funds.

6.      Defendant the United States Department of Health and Human Services is responsible for the administration of the Centers for Medicare and Medicaid Services.

7.      Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services. She is named as a defendant in her official capacity only.

8.      Defendant the United States Department of Veterans Affairs is responsible for the National Cemetery Administration and the State Cemetery Grants Service.

9.      Defendant Eric K. Shinseki is the Secretary of the United States Department of Veterans Affairs. He is named as a defendant in his official capacity only.

10.      The United States of America is named as a defendant because this action challenges the constitutionality of an Act of Congress. 28 U.S.C. § 2403(a).

## JURISDICTION

11.      The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1346(a)(2) because it arises under the Constitution and laws of the United States.

12.      Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(3), because no real property is involved in this action, the Commonwealth is situated in this judicial district, and the defendants are officers of the United States, agencies of the United States, and the United States.

## MARRIAGE EQUALITY IN MASSACHUSETTS

13.     In *Goodridge v. Department of Public Health*, 798 N.E.2d 941 (Mass. 2003), the Supreme Judicial Court of Massachusetts recognized that, without access to marriage, same-sex couples were "excluded from the full range of human experience and denied full protection of the [Massachusetts] laws." *Id.* at 957.

14.     The Supreme Judicial Court concluded that marriage is among the most basic of liberty interests and due process rights and that excluding same-sex couples from marriage violated the equality and liberty provisions of the Massachusetts Constitution.  798 N.E.2d at 959-961, 968.

15.     The Supreme Judicial Court stayed entry of its ruling for 180 days in order to give the Massachusetts General Court (the state legislature) an opportunity to remedy the constitutional infirmity.  798 N.E.2d at 970.

16.     On February 3, 2004, the Supreme Judicial Court rendered an advisory opinion to the Massachusetts General Court concluding that a bill prohibiting same-sex couples from entering into marriage, but allowing them to form civil unions, would not comply with the *Goodridge* decision and would violate the Massachusetts Constitution.  *In re Opinions of the Justices to the Senate*, 802 N.E.2d 565, 569 (Mass. 2004).

17.     Since May 17, 2004 – 180 days after the *Goodridge* decision – the Commonwealth has recognized a single marital status that is open and available to every qualifying couple, whether same-sex or different-sex.

18.     In September 2005, a Joint Session of the Commonwealth's Legislature (commonly referred to as a state "constitutional convention") overwhelmingly defeated a

legislatively proposed constitutional amendment to prohibit marriages between same-sex couples.

19.     In June 2007, during another Joint Session of the Legislature, state legislators considered a citizen-initiated proposed constitutional amendment to prohibit marriages between individuals of the same sex. That proposed constitutional amendment failed to obtain the twenty-five percent of votes needed to send it to the electorate in the state elections of November 2008.

20.     On July 31, 2008, the Massachusetts General Court repealed a 1913 law (MASS. GEN. LAWS ch. 207, §§ 11-12) that barred couples from marrying in Massachusetts if that marriage was prohibited in their home state. The repeal had the effect of permitting same-sex couples who resided in other states to obtain marriage licenses in Massachusetts.

## FEDERAL DEFENSE OF MARRIAGE ACT

21.     Prior to 1996, the federal government of the United States recognized that the authority to create and regulate marital status was the exclusive prerogative of the states and consistently deferred to each state's definition of marriage, including when the marital status of an individual was used as a marker of eligibility for a right, responsibility, or protection under federal law.

22.     DOMA was enacted in anticipation of the possibility that Hawai`i might permit marriages between same-sex couples. In 1993, the Supreme Court of Hawai`i ruled in *Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993), that refusing to grant marriage licenses to same-sex couples was sex-based discrimination. However, the court remanded the case for further proceedings and did not order the state to begin issuing marriage licenses to same-sex couples. As a result, at

the time that DOMA was enacted, no state recognized marriages between individuals of the same sex.

23.　　DOMA, when it was enacted, eviscerated more than 200 years of federal government deference to the states with respect to defining marriage.

24.　　DOMA prospectively invalidated marriages between same-sex couples for purposes of all federal laws, whether enacted before or after DOMA.  It provides:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife.

1 U.S.C. § 7.

25.　　DOMA applies to all facets of the federal government.  It also applies to the states when the states implement federal programs or are subject to federal law, including federal tax requirements applicable when the a state acts as an employer.

26.　　But for DOMA, married individuals in same-sex relationships in the Commonwealth would receive the same status, obligations, responsibilities, rights, and protections as married individuals in different-sex relationships under local, state, and federal laws.

27.　　DOMA was enacted for the purported purpose of defending "the institution of traditional heterosexual marriage," H.R. REP. NO. 104-664, at 2, 12 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2905, 2906, notwithstanding the fact that the determination of marital status is a power reserved exclusively to the states.  At the time of DOMA's enactment, several members of Congress expressed doubts about DOMA's constitutionality because Congress had never previously defined marriage.  *See*, *e.g.*, 142 CONG. REC. H7446 (daily ed. July 11, 1996)

(DOMA "defines marriage in Federal law for the first time and says to any State, 'No matter what you do, whether you do it by referendum or by public decision or by legislative action, the Federal Government won't recognize a marriage contracted in your state if we don't like the definition. We are going to trample the States' rights' . . . .") (statement of Rep. Jerrold Nadler); *id.* at H7449 ("[DOMA] is an unnecessary intrusion into the State domain of family law.  It tears at the fabric of our Constitution.  Historically, States have the primary authority to regulate marriage based upon the Tenth amendment of the Constitution. . . .  If there is any area of law to which States can lay a claim to exclusive authority, it is the field of family relations.") (statement of Rep. Neil Abercrombie); 142 CONG. REC. S10120 (daily ed. Sept. 10, 1996) ("[I]t is not clear that this is even an appropriate area for Federal legislation.  Historically, family law matters, including marriage, divorce, and child custody laws, have always been within the jurisdiction of State governments, not the Federal Government.") (statement of Sen. Russell Feingold).

28.     Although DOMA was enacted for the purported purpose of preserving state sovereignty, H.R. REP. NO. 104-664, at 2, Section 3 of DOMA actually interferes with each state's authority to define marriage.  Congress intended that marriages between same-sex couples not be given the same "imprimatur of legal sanction" as marriages between different-sex couples. 142 CONG. REC. H7446 (daily ed. July 11, 1996) (statement of Rep. Jim Talent); *see also* 142 CONG. REC. S10101 (daily ed. Sept. 10, 1996) ("Inaction on the part of Congress would be equivalent to approval of what the Hawaiian courts may do.  We can't afford such action.") (statement of Sen. Trent Lott).

29.     DOMA was enacted to codify animus against gay and lesbian people.  H.R. REP. NO. 104-664, at 15-16; 142 CONG. REC. H7444 (daily ed. July 11, 1996) ("[N]o society that has lived through the transition to homosexuality and the perversion which it lives and what it

brought forth.") (statement of Rep. Tom Coburn); 142 Cong. Rec. H7482 (daily ed. July 12,

1996) ("The very foundations of our society are in danger of being burned. The flames of

hedonism, the flames of narcissism, the flames of self-centered morality are licking at the very

foundations of our society….") (statement of Rep. Bob Barr); 142 Cong. Rec. S10068 (daily ed.

Sept. 9, 1996) (DOMA "will safeguard the sacred institutions of marriage and the family from

those who seek to destroy them and who are willing to tear apart America's moral fabric in the

process.") (statement of Sen. Jesse Helms).

30.     DOMA was enacted to deny federal rights and protections to same-sex couples

who are validly married under state law.  H.R. Rep. No. 104-664, at 18.  For example, DOMA

was enacted so that the federal government would not have to provide survivorship benefits to

the surviving same-sex spouse of a veteran of the Armed Services.  *Id.* (without DOMA, "these

marital [survivorship] benefits would … have to be made available to homosexual couples and

surviving spouses of homosexual 'marriages' on the same terms as they are now available to

opposite-sex married couples and spouses.").

31.     DOMA was also enacted for the purported purpose of preserving federal

resources by denying benefits and entitlements to married individuals in same-sex relationships

who would qualify for such benefits if they were in a different-sex relationship.  H.R. Rep. No.

104-664, at 18.  The Congressional Budget Office, however, has estimated that, if marriages

between same-sex couples were recognized in all fifty states and by the federal government, the

federal budget would benefit by $500 million to $900 million annually.  Congressional Budget

Office, *The Potential Budgetary Impact of Recognizing Same-Sex Marriages* (June 21, 2004) at

1, *available at* http://www.cbo.gov/ftpdocs/55xx/doc5559/06-21-SameSexMarriage.pdf.  This

net benefit is due to estimated increased revenues through income and estate taxes and decreased outlays for Supplemental Security Income, Medicaid, and Medicare. *Id.* at 2, 5.

## FEDERAL REGULATION OF MARRIAGE

32.     Section 3 of DOMA trespasses on a core area of state sovereignty by creating two distinct and unequal categories of married persons in states, such as Massachusetts, in which the legal status of marriage extends to both same-sex and different-sex couples.

33.     Since the founding of the United States, the determination of who can marry and who is recognized as being married has been made by state law. Prior to DOMA's enactment, federal law referring to marital status incorporated state definitions of marriage. In contravention of this longstanding respect for states' prerogative to define the institution of marriage, Section 3 of DOMA creates a federal definition of marriage and regulates the meaning of marriage within the sovereign states.

34.     The federal General Accounting Office identified 1,138 statutory provisions in which marital status is a factor in determining eligibility for or entitlement to federal benefits, rights, and privileges. General Accounting Office, *Defense of Marriage Act: Update to Prior Report*, GAO/OGC-04-353R (January 23, 2004), *updating* General Accounting Office, *Defense of Marriage Act*, GAO/OGC-97-16 (January 31, 1997), *available at* http://www.gao.gov/new.items/d04353r.pdf.

35.     These federal laws create rights, obligations, and protections pertaining to a wide range of areas, including the workplace, healthcare, taxes, Social Security, retirement, intellectual property, and court proceedings. They significantly affect the lives of every married person throughout the United States. By disregarding Massachusetts's definition of marriage,

DOMA prevents legally married same-sex couples in the Commonwealth from having access to hundreds of rights and protections provided to married different-sex couples.

36.    For example, Social Security benefits are affected by marital status in a variety of ways.  Spouses qualify for up to fifty percent of a disabled worker's benefit, spouses are entitled to a higher benefit upon the retirement or death of their spouse, and surviving spouses are given a one-time lump-sum death benefit.

37.    Eligibility for Medicare benefits is likewise affected by marital status.  Being married allows an otherwise ineligible individual to qualify for free hospital insurance (Medicare Part A) based on his or her spouse's work record.  Once a person qualifies for Medicare Part A, he or she can enroll in Part B (medical insurance) and, in turn, becomes eligible for Medicare Parts C (Medicare Advantage Plans) and D (prescription drug coverage).

38.    In the workplace, spouses enjoy rights relating to retirement and benefits plans, medical leave, and healthcare coverage.  Under most private employee benefit plans, which are federally regulated, spouses are guaranteed annuities, spousal approval is required to secure loans with pension benefits, and spouses are the automatic beneficiaries of many plans.  When a spouse is ailing, an employee is ensured at least twelve weeks of unpaid leave to care for his or her spouse.  In addition, spouses are entitled to enroll in an employer's healthcare plan outside of the open enrollment period and are allowed to maintain healthcare coverage through the employer even after employment is terminated.  A flexible spending account, which is exempt from federal income taxes, can be used to pay for medical expenses incurred by a spouse.

39.    Marital status also has a significant impact on federal income tax liability. Spouses are permitted to file a joint income tax return and pool deductions.  The value of healthcare coverage provided by an employer to a spouse is not considered taxable income.

Money and property transferred between spouses is not taxable, and spouses are permitted to contribute portions of their income to Individual Retirement Accounts of their spouses.

40.     Spouses of public safety officers (police officers, firefighters, etc.), railroad workers, military veterans, and federal employees are afforded certain rights, including payments for tuition fees, annuities, and healthcare coverage.

41.     Other examples of the severe impact of DOMA's discrimination against Massachusetts citizens who are legally married to a spouse of the same sex are set forth in the Addendum to this Complaint, incorporated here by reference.  Under DOMA, all of the rights and protections listed above and in the Addendum are denied to married same-sex couples and their families.

42.     Additionally, the severe impact of DOMA is amplified by the fact that the Commonwealth is conscripted as an agent to implement this discriminatory federal scheme.

43.     When the Commonwealth acts as an employer, DOMA's regulation of marriage requires the Commonwealth to disregard the lawful marriages of its own employees.  For example, the Commonwealth's employees have the option of including their spouses as a recipient of health benefits.  The Commonwealth, like other employers, is not required to treat the health benefits they provide to different-sex spouses as taxable income.  However, because DOMA restricts the meaning of spouse under the Internal Revenue Code, the Commonwealth is required to treat health benefits provided to a same-sex spouse as taxable income for the purpose of federal income and Medicare tax withholding.

44.     Approximately 550 employees of the Commonwealth include their same-sex spouses on their health insurance plans.  DOMA requires the Commonwealth to collect both federal income and Medicare taxes based on the fair market value of health benefits provided to

the same-sex spouses of these employees.  In order to accommodate DOMA's requirements, the Commonwealth must undertake a multi-step process involving several different offices and agencies.  These additional steps impose a burden on the Commonwealth's resources.

45.     In implementing any federally funded program that is subject to Section 3 of DOMA, the Commonwealth is required to choose between applying the state definition of marriage and applying DOMA's federal definition.  In making that choice, the Commonwealth is faced with an unconstitutional dilemma: maintain federal funding by disregarding marriages that are valid under state law and discriminating against same-sex couples or risk losing federal funding by honoring marriages valid under state law and treating all married couples equally.

## FEDERALLY FUNDED PROGRAMS

46.     The Massachusetts Executive Office of Health and Human Services provides healthcare coverage to eligible low- and moderate-income individuals and families in Massachusetts through the Commonwealth's Medicaid program, known as MassHealth.  *See*, *e.g.*, MASS. GEN. LAWS ch. 118E, § 9; 130 MASS. CODE REGS. ("CMR") § 501.002.  Originally enacted in 1965, Medicaid offers assistance to those who have insufficient incomes and resources to meet the costs of necessary medical services.

47.     MassHealth is jointly funded by the federal government and the Commonwealth. It is administered exclusively by Massachusetts, and it is overseen by the Defendant United States Department of Health and Human Services through its Centers for Medicare and Medicaid Services ("CMS").  *See*, *e.g.*, 42 U.S.C. § 1396a (state plans complying with federal mandates receive funds); MASS. GEN. LAWS ch. 118E, § 9 (establishing MassHealth "pursuant to and in conformity with the provisions of" the federal Medicaid statute, 42 U.S.C. §§ 1396 *et seq.*).

48.     In general, the federal government reimburses half of the qualifying health benefits paid out by MassHealth.  Each year, MassHealth receives billions of dollars in federal funding.  For the fiscal year ending on June 30, 2008, MassHealth received approximately $5.3 billion in funding from the United States Department of Health and Human Services for the medical assistance program.  Commonwealth of Massachusetts, OMB Circular A-133 Report (June 30, 2008) at 9, *available at*

http://www.mass.gov/Aosc/docs/reports_audits/SA/2008/2008_single_audit.pdf.

49.     The marital status of an individual seeking or receiving coverage affects MassHealth's determinations in several ways.

50.     MassHealth coverage is provided based on financial eligibility, which is determined based on the applicant's available income and assets.  In assessing eligibility of a married individual, the individual's income and assets are combined with those of his or her spouse, subject to certain exceptions.

51.     Because marital status is a key marker in the eligibility process, the conflict between Section 3 of DOMA and the Commonwealth's definition of marriage creates two constitutional problems in the implementation of MassHealth.  First, federal law requires MassHealth to assess married individuals in same-sex relationships as though they were "single," whereas married individuals in different-sex relationships must be assessed as married.   As a result, in order to comply with federal law, MassHealth must treat married individuals differently depending only on whether they are married to a person of the same sex.  Second, MassHealth cannot obtain federal financial participation ("FFP") for coverage provided to individuals in same-sex marriages who qualify when their marriages are honored in the eligibility analysis.

52.     In 2004, soon after the *Goodridge* decision, MassHealth sought clarification from CMS as to how to comply with federal law in light of the Commonwealth's recognition of marriages between individuals of the same sex.

53.     CMS informed MassHealth that it must apply the federal definition of marriage, as provided in DOMA, when assessing eligibility for Medicaid benefits.  Letter from Charlotte S. Yeh, Regional Administrator, Centers for Medicare & Medicaid Services, to Kristen Reasoner Apgar, General Counsel, Commonwealth of Massachusetts, Executive Office of Health and Human Services (May 28, 2004), attached as Exhibit 1.

54.     CMS specifically asserted that MassHealth cannot treat an individual in a same-sex marriage as eligible for Medicaid benefits on the basis of combined income or assets with a same-sex spouse, if the individual would be ineligible for benefits when considered as "single." CMS explicitly stated that FFP would not be available for the Commonwealth's expenditures for such an individual: "DOMA does not give [CMS] the discretion to recognize same-sex marriage for purposes of the Federal portion of Medicaid."  Ex. 1 at 1.

55.     CMS also asserted that federal Medicaid law requires MassHealth to provide coverage to married individuals in same-sex relationships who qualify when assessed as "single."

56.     On July 31, 2008, the Commonwealth enacted the MassHealth Equality Act, codified at MASS. GEN. LAWS ch. 118E, § 61.  The law provides that "[n]otwithstanding the unavailability of federal financial participation, no person who is recognized as a spouse under the laws of the commonwealth shall be denied benefits that are otherwise available under this chapter due to the provisions of [DOMA] or any other federal non-recognition of spouses of the same sex."  *Id.*

57.     In response to enactment of that law, in 2008, CMS again informed the Commonwealth that DOMA "limits the availability of FFP by precluding recognition of same sex couples as 'spouses' in the Federal program." CMS further stated that, "because same sex couples are not spouses under Federal law, the income and resources of one may not be attributed to the other without actual contribution, i.e. you must not deem income or resources from one to the other." Letter from Richard R. McGreal, Associate Regional Administrator, Centers for Medicare & Medicaid Services, to JudyAnn Bigby, M.D., Secretary, Commonwealth of Massachusetts, Executive Office of Health and Human Services (August 21, 2008), attached as Exhibit 2.

58.     CMS further asserted that the Commonwealth "must pay the full cost of administration of a program that does not comply with Federal law." Ex. 2 at 2.

59.     MassHealth makes eligibility determinations for married couples without regard to whether the marriage is between persons of the same sex or different sexes, as is required by the United States Constitution. As a result, married individuals in same-sex relationships who would qualify under federal law for Medicaid benefits but for the application of DOMA, are nevertheless covered by MassHealth. Because FFP is not available for expenditures relating to such individuals, under the MassHealth Equality Act, described above, the Commonwealth pays for the entire cost of MassHealth coverage provided to those individuals.

60.     The Commonwealth has estimated that the annual amount of FFP that is unavailable due to DOMA is $2.37 million.

61.     Additionally, because the United States Constitution compels MassHealth to treat similarly all individuals validly married under Massachusetts law, Massachusetts's compliance with the Equal Protection Clause requires MassHealth to treat certain married individuals in

17

same-sex relationships as ineligible for MassHealth coverage even though they would be eligible for Medicaid benefits if the federal definition of marriage were applied (and their marriages ignored).

62.     Section 3 of DOMA creates an unconstitutional dilemma for the Commonwealth by requiring MassHealth to choose between, on the one hand, violating the Equal Protection Clause of the Fourteenth Amendment by applying DOMA's federal definition of marriage in order to receive federal funding from CMS and, on the other hand, losing FFP for otherwise eligible individuals and risking enforcement for non-compliance by CMS if MassHealth continues to treat all married individuals equally in assessing MassHealth eligibility.

63.     Marital status is also relevant to the operations of veterans' cemeteries at Agawam and Winchendon, Massachusetts, by the Massachusetts Department of Veterans Services ("DVS").   These cemeteries are maintained for the burial of Massachusetts veterans, their spouses, and their children.  The cemeteries are operated solely by the Commonwealth and are located on land owned by the Commonwealth.

64.     These cemeteries were constructed, expanded, and improved through the expenditure of federal funding provided by the Defendant United States Department of Veterans Affairs ("VA").  38 U.S.C. § 2408(b); 38 C.F.R. § 39.5.  This federal funding is provided by a grant program administered by the VA's State Cemetery Grants Service, which is a part of the VA's National Cemetery Administration.

65.     The State Cemetery Grants Program was created in 1978 to complement the service provided by the VA's system of veterans' cemeteries operated by the National Cemetery Administration.  Through the combination of federal- and state-operated burial sites, the VA seeks to make a veterans' cemetery available within seventy-five miles of the homes of 90% of

the veterans across the country.  United States Department of Veterans Affairs, State Cemetery Grants Program, http://www.cem.va.gov/scg/scgkit.asp (last visited June 19, 2009).

66.     To be eligible for burial as a veteran in a Massachusetts veterans' cemetery, an individual must satisfy federal requirements pertaining to military service and a state requirement of a sufficient connection to Massachusetts, such as having a home of record in Massachusetts or being a Massachusetts resident.  United States Department of Veterans Affairs, Federal Benefits for Veterans, Dependents & Survivors at 59 (2009), *available at* http://www1.va.gov/opa/vadocs/fedben.pdf; Massachusetts Veterans' Memorial Cemeteries, Interment Registration Instructions and Requirements for Agawam and Winchendon (Feb. 2002) at 2-3, *available at* http://www.ci.woburn.ma.us/documents/Veterans%20Office/MA%20cemetary%20pre%20registration.pdf.

67.     To be eligible for burial as the spouse of a veteran in a Massachusetts veterans' cemetery, federal regulations require that an individual produce a marriage certificate and demonstrate that the veteran spouse is eligible for burial.  Federal Benefits for Veterans, Dependents & Survivors at 59; Interment Registration Instructions and Requirements for Agawam and Winchendon at 2-3.

68.     In operating and maintaining these cemeteries, the Commonwealth is required to comply with regulations promulgated by the Secretary of the VA.  38 U.S.C. § 2408(c).

69.     The regulations contain the requirement that these cemeteries "must be operated solely for the interment of veterans, their spouses, [and] surviving spouses."  38 C.F.R. § 39.5(a).

70.     The VA can recapture from the Commonwealth any funds provided by the VA for the construction, expansion, or improvement of the cemeteries at Agawam and Winchendon if

either is deemed to be no longer operated solely as a veterans' cemetery. 38 U.S.C. § 2408(b)(3); 38 C.F.R. § 39.18(a).

71.     The Commonwealth has received three federal grants for the Agawam and Winchendon cemeteries. In 1999, $6,818,011 in federal funds was provided for the construction of the Agawam cemetery. In 2003, $4,780,375 in federal funds was provided for the expansion of the Agawam cemetery. In 2003, $7,422,013 in federal funds was provided for the construction of the Winchendon cemetery.

72.     Soon after Massachusetts recognized the right to marry for individuals of the same sex, DVS sought clarification from the VA as to how to comply with federal law. In response to this inquiry, the VA informed the Commonwealth that the "VA would be entitled to recapture Federal grant funds provided to DVS for either [the Agawam or Winchendon] cemeteries should [Massachusetts] decide to bury the same-sex spouse of a veteran in the cemetery, unless that individual is independently eligible for burial." Letter from Tim S. McClain, General Counsel to the Department of Veteran Affairs, to Joan E. O'Connor, General Counsel, Massachusetts Department of Veterans' Services at 1 (June 18, 2004), attached as Exhibit 3.

73.     The VA further stated that, in light of DOMA, the cemeteries at Agawam and Winchendon "would not be operated solely for the interment of veterans and their spouses and children if [Massachusetts] allowed the interment of a person solely on the basis that the person is recognized under [Massachusetts] law as being the same-sex spouse of a veteran." Ex. 3 at 2.

74.     On June 4, 2008, the National Cemetery Administration published NCA Directive 3210/1, which states that "individuals in a same-sex civil union or marriage are not eligible for burial in a national cemetery or State veterans cemetery that receives federal grant funding based

on being the spouse or surviving spouse of a same-sex veteran." NCA Directive 3210/1 (June 4, 2008), attached as Exhibit 4.

75.     Massachusetts veterans and their family members regularly apply for burial in either the Agawam or Winchendon cemetery far in advance of their deaths. DVS either pre-approves or denies these applications by determining whether the applicants are eligible for burial in either of these cemeteries, based on the federally mandated and state-specific criteria described herein.

76.     DVS treats identically the applications of married veterans in same-sex and different-sex relationships.

77.     DVS has pre-approved an application for burial submitted by a Massachusetts veteran and his same-sex spouse. This same-sex spouse is not otherwise eligible for burial in a Massachusetts veterans' cemetery.

78.     The VA has taken the position that it has the authority to withhold federal funding from the Commonwealth due to the Commonwealth's equal and identical treatment of married individuals in assessing eligibility for interment.

79.     Section 3 of DOMA creates an unconstitutional dilemma for the Commonwealth by requiring DVS to choose between, on the one hand, violating the Equal Protection Clause of the Fourteenth Amendment by refusing burial of the same-sex spouses of Massachusetts veterans in a Massachusetts veterans' cemetery and, on the other hand, risking enforcement for non-compliance by the VA if DVS continues to apply the state definition of marriage in assessing eligibility for burial in a veterans' cemetery.

# CAUSES OF ACTION

## COUNT ONE – VIOLATION OF THE TENTH AMENDMENT
## AND CONSTITUTIONAL PRINCIPLES OF FEDERALISM
### (U.S. CONST. amend. X)

80.     The allegations contained in paragraphs 1 through 79 are re-alleged and

incorporated into this count as though fully set forth herein.

81.     The Tenth Amendment to the United States Constitution expressly reserves to the

states all powers except those limited powers granted to the federal government.

82.     The Tenth Amendment ensures the division of powers between the states and

federal government that is necessary for the dual sovereignty of the federal system.

83.     The Tenth Amendment preserves for the states the authority to regulate and define

marriage for their citizens.

84.     Congress lacks the authority under Article I of the United States Constitution to

regulate the field of domestic relations, including marriage.

85.     Section 3 of DOMA violates the Tenth Amendment, exceeds Congress's Article I

powers, and runs afoul of the Constitution's principles of federalism by creating an extensive

federal regulatory scheme that interferes with and undermines the Commonwealth's sovereign

authority to define marriage and to regulate the marital status of its citizens.

86.     Enforcement of Section 3 of DOMA unconstitutionally commandeers the

Commonwealth and its employees as agents of the federal government's regulatory scheme and

requires the Commonwealth to facilitate the implementation of a discriminatory federal policy.

## COUNT TWO – VIOLATION OF THE SPENDING CLAUSE
### (U.S. CONST. art. I, § 8)

87.     The allegations contained in paragraphs 1 through 86 are re-alleged and incorporated into this count as though fully set forth herein.

88.     Article I, § 8 of the United States Constitution limits the power of Congress to attach conditions to the receipt of federal funds.  One such limitation is that Congress may not exercise its spending power in a manner that induces a state to violate the constitutional rights of its citizens.

89.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV.

90.     Massachusetts recognizes a unitary status of married persons, irrespective of whether they are part of a same-sex or a different-sex couple.  Section 3 of DOMA, as applied to the Medicaid statute, 42 U.S.C. §§ 1396 *et seq.*, requires the Commonwealth to violate the Equal Protection Clause by treating married individuals in same-sex relationships and married individuals in different-sex relationships differently for purposes of determining eligibility for Medicaid benefits.

91.     Section 3 of DOMA, as applied to the State Cemetery Grants Program, 38 U.S.C. § 2408, likewise requires the Commonwealth to violate the Equal Protection Clause by treating married individuals in same-sex relationships and married individuals in different-sex relationships differently for the purposes of determining eligibility for burial in a Massachusetts veterans' cemetery.

23

92.     None of the interests purportedly furthered by DOMA, as it applies to these programs, justifies discrimination against married individuals in same-sex relationships. Because all of these individuals are married under Massachusetts law, there is no basis for DOMA's required differential treatment of same-sex and different-sex couples.  As a result, DOMA, as applied to these programs, violates the Spending Clause.

93.     Another limitation on Congress's authority pursuant to the Spending Clause is that Congress may not attach conditions to the receipt of federal funds that lack a sufficient nexus to the purpose(s) advanced by the program's implementation.

94.     Medicaid funding is given to MassHealth for the purpose of providing healthcare coverage to low- and moderate-income residents of the Commonwealth.

95.     CMS has mandated that MassHealth must disregard the valid marriages of same-sex couples in order to continue to receive federal funds.

96.     Veterans' cemetery funding is given to DVS for the purpose of constructing and improving cemeteries that provide a convenient burial site for military veterans and their families.

97.     The VA has mandated that DVS must disregard the valid marriages of veterans and their same-sex spouses in order to continue to receive federal funds.

98.     Because there is no nexus between discriminating against individuals in same-sex marriages and the purposes advanced by these programs, Section 3 of DOMA, as applied to these programs, violates the Spending Clause.

## COUNT THREE – DECLARATORY JUDGMENT
### (28 U.S.C. § 2201)

99.　As demonstrated by the allegations set forth in paragraphs 1 through 98, which are incorporated into this count as though fully set forth herein, there is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of the Commonwealth and the proper legal relations between the Commonwealth and the Defendants to warrant relief under 28 U.S.C. § 2201.

100.　The harm to the Commonwealth as a direct result of DOMA is sufficiently real and/or imminent to warrant the issuance of a conclusive declaratory judgment usefully clarifying the legal relations of the parties.


## PRAYER FOR RELIEF

The Commonwealth of Massachusetts respectfully requests that the Court:

A.　Enter an order declaring that 1 U.S.C. § 7 is unconstitutional as applied in Massachusetts, where state law recognizes marriages between same-sex couples;

B.　Enter an order declaring that 1 U.S.C. § 7 as applied to 42 U.S.C. §§ 1396 *et seq.* and 42 C.F.R. pts. 430 *et seq.* is unconstitutional as applied in Massachusetts, where state law recognizes marriages between same-sex couples;

C.　Enter an order declaring that 1 U.S.C. § 7 as applied to 38 U.S.C. § 2408 and 38 C.F.R. pt. 39 is unconstitutional as applied in Massachusetts, where state law recognizes marriages between same-sex couples;

D.      Enjoin Defendants and any other agency or official acting on behalf of Defendant the United States of America from enforcing 1 U.S.C. § 7 against Massachusetts and any of its agencies or officials;

E.      Award attorneys' fees and costs; and

F.      Grant any other relief that the Court considers proper.


Dated:  July 8, 2009                    Respectfully submitted:
Boston, Massachusetts

                                        COMMONWEALTH OF MASSACHUSETTS
                                        MARTHA COAKLEY
                                        ATTORNEY GENERAL


                                        */s/ Maura T. Healey*
                                        */s/ Jonathan B. Miller*
                                        Maura T. Healey, BBO No. 640856
                                        Jonathan B. Miller, BBO No. 663012
                                        Christopher K. Barry-Smith, BBO No. 565698
                                        David S. Friedman, BBO No. 635807
                                        Assistant Attorneys General
                                        One Ashburton Place
                                        Boston, MA 02108
                                        Tel: (617) 727-2200
                                        Fax: (617) 727-5762
                                        Maura.Healey@state.ma.us
                                        Jonathan.Miller@state.ma.us
                                        CBarry-Smith@state.ma.us
                                        David.S.Friedman@state.ma.us

**ADDENDUM OF FEDERAL LAW REGULATING MARRIAGE**

| Topic | Citation | Effect on Marriage |
|---|---|---|
| **Federal Employee Benefits** | 5 U.S.C. §§ 6382-6383 | Most federal employees may use up to a total of twelve administrative work weeks of sick leave each year to care for a spouse with a serious health condition. |
| | 5 U.S.C. § 8133 | If a federal employee's death resulted from an injury sustained in the performance of duty, the employee's surviving spouse is eligible for compensation equal to a percentage of the employee's monthly pay. The compensation for a surviving spouse is paid for life, unless he or she re-marries before the age of fifty-five. |
| | 5 U.S.C. §§ 8331, 8401; 5 U.S.C. §§ 8331(10), 8401(23) | Federal employees with permanent appointment are eligible for retirement and disability benefits under either the Civil Service Retirement System ("CSRS") or the Federal Employees Retirement System ("FERS").  Both CSRS and FERS provide survivor benefits for the spouse of a deceased federal employee or retiree. |
| | 5 U.S.C. §§ 8341(b)(1), 8442(a)(1) | Married federal employees who retire under either CSRS or FERS receive a joint and survivor annuity. |
| | 5 U.S.C. § 8341(b)(1) | Under CSRS, the surviving spouse of a federal employee is eligible for an annuity equal to 55% of the retirement benefit that the deceased employee had accrued at the time of death. |
| | 5 U.S.C. § 8442(a)(1) | Under FERS, the surviving spouse is eligible for a lump-sum survivor benefit equal to one-half of the employee's annual basic pay plus a lump-sum payment. |
| | 5 U.S.C. § 8901(5) | Spouses of federal employees can obtain health insurance through the Federal Employees Health Benefits Program ("FEHB") as a member of the employee's family. |
| | 5 U.S.C. §§ 8905, 8905a U.S. Office of Personnel Management, *Death Benefits*, http://www.opm.gov/retire/faq/post/faq4.asp#family (last visited July 7, 2009) | Spouses who survive a deceased federal employee who was enrolled in the FEHB may continue to participate in that program at the same cost as a federal employee if, prior to the employee's death, the spouse was covered as a family member under the plan. |
| | 5 U.S.C. §§ 8981-8992 | Spouses of federal employees can obtain dental insurance and vision benefits as a member of the employee's family. |
| | Federal Retirement Thrift Investment Board, *TSP Features for Civilians*, http://www.tsp.gov/features/chapter15.html (last visited July 7, 2009) | Under FERS, federal employees participate in a Thrift Savings Plan. The employee's spouse has the right to consent before money is borrowed from the account as well as to approve withdrawal. |
| | FSAFeds Program, *Summary of Benefits with Frequently Asked Questions*, https://www.fsafeds.com/fsafeds/SummaryofBenefits.asp#HCFSA (last visited July 7, 2009) | Spouses of federal employees can participate in the employee's Health Care Flexible Savings Account. |

| Topic | Citation | Effect on Marriage |
|---|---|---|
| **Federal Employee Benefits** | U.S. Department of Labor, *Employment Standards Administration, Division of Federal Employees' Compensation, CA-11*, http://www.dol.gov/esa/regs/compliance/owcp/ca-11.htm (last visited July 7, 2009) | If a federal employee becomes disabled from a work-related injury, the employee is paid one-third of his or her salary if he of she has no dependents, but three-quarters of his or her salary if he or she has dependents. A spouse can be considered a dependent. |
| **Bankruptcy** | 11 U.S.C. § 302 | Spouses are permitted to file jointly for bankruptcy protection. |
| | Administrative Office of the United States Courts, *Bankruptcy Basics* (April 2006), http://www.uscourts.gov/bankruptcycourts/bankbasics0908.pdf | The ability to file jointly allows creditors to file only one claim and the married couple to pay only one filing fee. |
| | 11 U.S.C. §§ 507, 1328 | A former spouse of a debtor making a claim for payments required as part of a divorce or separation agreement is given a higher priority than some other creditors. |
| **National Housing Act** | 12 U.S.C. § 1701j-3(d)(6) | Banks sometimes utilize a due-on-sale clause in mortgage agreements that permit them to declare a loan payable in full if the borrower sells the property without the bank's consent. Use of a due-on-sale clause is prohibited in cases of transfers of residential property from one spouse to another. |
| **Consumer Credit Protection Act** | 15 U.S.C. §§ 1673(a), (b)(2) | Up to 25% of a person's disposable weekly earning can be subject to garnishment, but if the purpose of the garnishment is to enforce an order for the support of any person, including a spouse or former spouse, the maximum that can be garnished is 60%. |
| **Copyright** | 17 U.S.C. § 203(a)(2)(A) | When an author is dead, his or her right to terminate the licensing of a copyright may be exercised by the author's surviving spouse. |
| | 17 U.S.C. § 304(a)(1)(C)(2) | A surviving spouse is entitled to the renewal and extension of a copyright for a further term of sixty-seven years. |
| **Education Loans** | 20 U.S.C. § 1087e(e)(2) | Various federal student loans are eligible for income contingent repayment. If the borrower is married, the repayment schedule is based upon the adjusted gross income of the borrower and his or her spouse. |
| | 20 U.S.C. §§ 1087nn(a), (b)(1), (b)(4), (b)(7); 20 U.S.C. § 1087vv(d)(5) | Eligibility for federal financial assistance for education is determined based on information provided in the Free Application for Federal Student Aid ("FAFSA"), which requires identification of a student's marital status as well as information about the available income, assets, and additional expenses of the student's spouse. A student is considered an independent applicant if he or she is married. |
| | 20 U.S.C. § 1087oo(a); 20 U.S.C. § 1087oo(f)(1) | The expected family contribution of any dependent student includes consideration of both parents' income and assets if the parents are married. If a student's parents are not married or are divorced, parental contribution includes only the income and assets of one of the parents. |
| **Tax** | 26 U.S.C. § 1 | Spouses are permitted to file a joint federal tax return. |
| | 26 U.S.C. § 105 | A healthcare flexible spending account, which is exempt from income tax, can be used to pay for medical expenses of an employee or a spouse. |
| | 26 U.S.C. § 106 | When a married employee receives employer-provided health benefits, the value of the health insurance for the employee's spouse is not considered taxable compensation to the employee. |

| Topic | Citation | Effect on Marriage |
|---|---|---|
| **Tax** | 26 U.S.C. § 163(h)(3) | Taxpayers are limited to $1,000,000 in mortgage interest deductions for acquisition indebtedness and $100,000 for home equity indebtedness on either a joint return or a single return; married taxpayers filing individually are limited to $500,000 for acquisition indebtedness and $50,000 for home equity indebtedness. |
| | 26 U.S.C. § 213 | Married couples filing jointly may pool deductions, such as the deduction for certain uncompensated medical expenses. |
| | 26 U.S.C. § 215(a) | Alimony payments are excluded from the taxable income of the spouse making alimony payments. |
| | 26 U.S.C. § 219 | An employed spouse is permitted to make an Individual Retirement Account contribution on behalf of a non-working spouse or a spouse who has little income. |
| | 26 U.S.C. § 401 | Spouses receive preferential treatment in retirement savings and use of retirement funds. |
| | 26 U.S.C. § 1041 | The transfer of property (including retirement funds) to a spouse, or to a former spouse incident to a divorce, is not a taxable transfer. |
| | 26 U.S.C. § 1211(b)(1) | Taxpayers are limited to a $3,000 net capital loss deduction on a joint or single return; married taxpayers filing individually are limited to a $1,500 net capital loss deduction. |
| | 26 U.S.C. § 2056(a) | The value of the taxable estate is determined by deducting the value of any interest in property that passes or has passed from the decedent to a surviving spouse. |
| | 26 U.S.C. § 2603; 26 U.S.C. § 1041; Internal Revenue Service, *Frequently Asked Questions on Gift Taxes*, http://www.irs.gov/businesses/small/article/0,,id=108139,00.html (last visited July 7, 2009) | An individual can give another individual who is not a spouse no more than $13,000 in a calendar year without having to file a gift tax return. There is no limit on the amount one spouse can give another. |
| | 26 U.S.C. § 6013(d)(3) | Spouses have joint and several liability for the income tax on a joint return unless innocent spouse relief applies. |
| **Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)** | 29 U.S.C. § 1166(a); U.S. Department of Labor, *Continuation of Health Coverage*, http://www.dol.gov/dol/topic/health-plans/cobra.htm (last visited July 7, 2009) | If an employer chooses to provide an employee and his or her spouse with healthcare coverage, COBRA requires the employer upon termination of employment to offer the employee's spouse the opportunity to continue their healthcare coverage for a prescribed period, provided that the spouse pays the applicable premium. |
| **Employee Retirement Income Security Act (ERISA)** | 26 U.S.C. §§ 401(a)(11); 401(a)(17) | Pension plans are required to provide spouses with certain protections, including a Qualified Preretirement Survivor Annuity while the employee is working and a Qualified Joint and Survivor Annuity at retirement. |
| | 26 U.S.C. § 401(a)(11)(B)(iii) | Under a profit-sharing plan, a spouse is the automatic beneficiary of the employee's benefit, unless waived by the spouse. |
| | 26 U.S.C. § 417(a)(2) | An employee must obtain his or her spouse's approval to waive a Qualified Joint and Survivor Annuity or a Qualified Pre-retirement Survivor Annuity. |
| | 26 U.S.C. § 417(a)(4) | An employee must obtain his or her spouse's approval to use his or her accrued pension benefit as a security for a loan. |

| Topic | Citation | Effect on Marriage |
|-------|----------|--------------------|
| **ERISA** | 29 U.S.C. § 1055 | Defined contribution plans, such as 401(k) plans, pay the account balance to the designated beneficiary if the participant dies. The employee's spouse is the automatic beneficiary upon the employee's death, unless the employee has specifically designated someone else. |
| | 29 U.S.C. § 1056(d)(3); 26 U.S.C. § 401(a)(13)(B) | Benefits from a retirement plan subject to ERISA may not be pledged, attached, levied upon or awarded by a court to another private party. One major exception is divorce proceedings, where the retirement assets may be viewed as marital property. Federal law permits benefits to be awarded to a former spouse through a Qualified Domestic Relations Order. |
| **Family and Medical Leave Act** | 29 U.S.C. § 2612(a)(1)(C) | Requires covered employers to offer employees up to twelve weeks of unpaid leave to care for a spouse. |
| **Veterans Benefits** | 38 U.S.C. § 1115 | Veterans who have at least a 30% disability are entitled to additional disability compensation if they have dependents. For this purpose, a spouse is considered a dependent. |
| | 38 U.S.C. §§ 1121, 1141 | A surviving spouse of a veteran is entitled to receive a monthly pension if the veteran's death was service connected. |
| | 38 U.S.C. §§ 1158 | A veteran's spouse may receive compensation if a veteran disappears. |
| | 38 U.S.C. §§ 1311, 1317 | A surviving spouse of a veteran is entitled to receive monthly dependency or indemnity compensation payments if the veteran's death was service connected. |
| | 38 U.S.C. §§ 1701, 1781 | The spouses of certain veterans are entitled to medical care provided by the government. |
| | 38 U.S.C. § 1722 | In determining, based on income and assets, whether a veteran has the ability to defray necessary home care and medical expenses, the property of the spouse of the veteran is included as an asset of the veteran. |
| | 38 U.S.C. § 1901 | Spouses of veterans may be beneficiaries of National Service Life Insurance. |
| | 38 U.S.C. § 2402 | Spouses of veterans are eligible for interment in national cemeteries if the veteran is eligible. |
| | 38 U.S.C. §§ 3500, 3501, 3511, 3512, 3534 | The surviving spouse of a veteran who died of a service-connected disability is entitled to educational assistance for up to 45 months and to job counseling, training, and placement services. |
| | 38 U.S.C. § 3701(b)(2) | The loan guarantee benefit extends to surviving spouses of veterans who died on active duty or as a result of a service-connected disability. |
| | 38 U.S.C. § 3704(c)(2); U.S. Department of Veterans Affairs, *Pre-Loan Frequently Asked Questions*, http://www.homeloans.va.gov/faq preln.htm (last visited July 7, 2009). | Loans guaranteed by the U.S. Department of Veterans Affairs assist eligible veterans in the purchase of a home by protecting private lenders against loss if the veteran fails to repay the mortgage. The guarantee requires that the veteran certify an intent to occupy the property, but if the veteran is in active duty status and unable to occupy, the veteran's spouse can fulfill the occupancy requirement. |
| | 38 U.S.C. § 4215; 5 U.S.C. § 2108 | Surviving spouses and certain spouses enjoy certain preferences in federal employment and job training. |
| | 38 C.F.R. § 39.5(a) | Spouses of veterans are entitled to interment in state-operated veterans' cemeteries if the veteran is eligible for burial. |

| Topic | Citation | Effect on Marriage |
|-------|----------|--------------------|
| **Medicare** | 42 U.S.C. § 1395i-2 | Marriage allows an ineligible individual who has never worked or who has not worked long enough to qualify for free hospital insurance based on his or her spouse's work record. |
| | Centers for Medicare & Medicaid Services, *Medicare and You 2009*, CMS Publication No. 10050 (Sept. 2008), http://www.medicare.gov/Publications/Pubs/pdf/10050.pdf | Once a person qualifies for Medicare Part A (hospital insurance) – including by qualifying on the basis of his or her spouse's eligibility for Medicare Part A even though he or she would not independently qualify – he or she can enroll in Part B (medical insurance) by paying a monthly premium.  Anyone enrolled in both Medicare Part A and Part B may enroll in Part C, which provides additional benefits.  When a person receives coverage under Medicare Part A, Part B, or Part C, he or she is eligible to receive prescription drug coverage under Part D by paying a monthly premium. |
| **Medicaid** | 42 U.S.C. § 1396r-5(b)(1) | The income of a spouse is not deemed available to a married Medicaid applicant receiving institutionalized care. |
| | 42 U.S.C. § 1396r-5(d) | After an institutionalized spouse is determined to be eligible for medical assistance, in determining the amount of the institutionalized spouse's income that is to be applied monthly to payment for the costs of care in the institution, a community spouse allowance is to be deducted from the institutionalized spouse's countable income. |
| | 20 C.F.R. §§ 416.1160, 416.1202 | The income and assets of a spouse are deemed available to a married Medicaid applicant. |
| | 42 C.F.R. § 433.36(g)(3)(i) | A state cannot place a lien on an institutionalized Medicaid recipient's property if the member's spouse is living in the home. |
| | 42 C.F.R. § 433.36(h)(2)(i) | A state can recover payments from the estates of deceased members.  This recovery must be deferred when there is a surviving spouse. |
| **Social Security** | 42 U.S.C. § 402(b), (c) | If a worker is eligible for federal disability benefits, a spouse and/or a divorced spouse may qualify for up to 50% of the disabled worker's benefit amount. |
| | 42 U.S.C. § 402(b), (c) | When both members of a married couple are retired and collecting Social Security benefits, the lower-earning spouse can increase his or her benefit by up to one half of the higher-earning spouse's payment. |
| | 42 U.S.C. § 402(e), (f) | After a worker's death, a surviving spouse and/or ex-spouse may receive the worker's higher benefit, instead of his or her own benefit, as long as the spouse is at least sixty years old, was married to the worker for at least nine months, and is not currently married to someone else. |
| | 42 U.S.C. § 402(i); 20 C.F.R. §§ 404.390 – 404.391 and § 404.347 | A surviving spouse is entitled to a one-time lump-sum death benefit of $255 if the surviving spouse was "living in the same household with the deceased at the time of death," if the surviving spouse applies for the benefit "prior to the expiration of two years after the date of death …," and if the deceased spouse was "fully or currently insured" at the time of death. |
| | 42 U.S.C. 1382 | When two eligible individuals are spouses who live together, only one is eligible for Supplemental Security Income benefits in a given month. |
| | 42 U.S.C. §§ 1382a, 1382b; Social Security Administration, *Understanding Supplemental Security Income*, http://socialsecurity.gov/ssi/text-income-ussi.htm (last visited July 7, 2009) | For purposes of determining eligibility for Supplemental Security Income benefits, the resources of a spouse are deemed to be those of the applicant as well, with certain limited exclusions. |

| Topic | Citation | Effect on Marriage |
|---|---|---|
| **Public Safety Officers Benefit Program** | 42 U.S.C. § 3796; Bureau of Justice Assistance, *Public Safety Officers' Benefits Program*, http://www.ojp.usdoj.gov/BJA/gr ant/psob/psob_main.html (last visited July 7, 2009) | If a public safety officer dies in the line of duty, his or her spouse is entitled to death benefits. As of October 1, 2008, the benefit amount is a one-time payment of $315,746. |
| | 42 U.S.C. § 3796d-1; 38 U.S.C. § 3532; Bureau of Justice Assistance, *Public Safety Officers' Benefits Program: Education Assistance Benefits*, http://www.ojp.usdoj.gov/BJA/gr ant/psob/psob_education.html (last visited July 7, 2009) | If a public safety officer dies or is permanently disabled in the line of duty, his or her spouse is entitled to payment for education expenses, including tuition and fees, room and board, books, supplies, and other education-related costs. As of October 1, 2008, the maximum award for a full-time student is $915.00 per month of class attendance. |
| **Child Support Enforcement** | 42 U.S.C. §§ 659, 660 | The federal government assists in enforcing the support obligations of parents to their children and the spouse with whom the children are living. Federal courts have jurisdiction to hear enforcement matters, and the federal government withholds payment due to an individual if that individual owes child support. |
| **Older Americans Act** | 42 U.S.C. § 3030g-21 | Nutrition services, including congregate and home delivery meals, are provided to older individuals (age sixty and over) and their spouses, irrespective of the spouse's age. |
| **Railroad Retirement Act** | 45 U.S.C. § 59 | 45 U.S.C. § 51 creates liability for injuries to employees due to railroad negligence. Any right of action given to a person suffering injury survives to his or her personal representative, for the benefit of the surviving spouse. |
| | 45 U.S.C. § 231a(c) | Spouses of railroad workers are entitled to retirement and disability annuities to which railroad workers are entitled. |
| | 45 U.S.C. § 231a(c)(2) | An annuity may also be payable to the divorced wife or husband of a retired employee if their marriage lasted for at least ten consecutive years, both have attained age sixty-two for a full month, and the divorced spouse is not currently married. |
| **Federal Court Privileges** | *Trammel v. United States*, 445 U.S. 40 (1980) | In federal courts, under the testimonial privilege, an individual cannot be compelled to testify against his or her spouse. |
| | *Blau v. United States*, 340 U.S. 332 (1951) | In federal courts, confidential communications between spouses are privileged. The privilege can be asserted by either spouse. |
| **Health Insurance Portability and Accountability Act (HIPAA)** | U.S. Department of Labor, *Portability of Health Coverage*, http://www.dol.gov/dol/topic/heal th-plans/portability.htm (last visited July 7, 2009) | Special enrollment rights allow spouses of a covered employee to enroll outside of a group plan's open enrollment period. |