**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | |
| Plaintiff, | Case No. 1:09-11156-JLT |
| vs. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF REPRESENTATIVE LAMAR SMITH'S
MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

I.  Representative Smith Is Entitled to Intervention As of Right. .......................... 3

  A.  Representative Smith Has a Significant Protectable Interest in a
     Reasonably Vigorous Defense of DOMA. ............................................... 4

  B.  The DOJ Is Not Adequately Defending Representative Smith's Interests. ........... 8

     1.  Representative Smith will argue—as the DOJ has in past cases—
        that the Supreme Court's decision in *Baker v. Nelson* controls this
        case ....................................................................................................... 10

     2.  Representative Smith will argue that DOMA is rationally related to
        Congress' interests in channeling procreative relationships into
        stable unions that consist of both a mother and a father. .......................... 11

  C.  Representative Smith's Motion to Intervene Is Timely. ....................................... 14

     1.  Post-judgment intervention is timely when filed for the purpose of
        appeal. ................................................................................................... 15

     2.  Representative Smith believed that the DOJ would vigorously
        represent his interests, as it has so many times in the past. ..................... 16

     3.  Representative Smith's intervention will not prejudice any party ............ 16

II.  Representative Smith Would Add the Necessary Adversity of Interest that the
    Case Currently Lacks. ............................................................................................. 18

III.  Permissive Intervention Is Also Appropriate for the Same Reasons. .............................. 19

CONCLUSION .................................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................................... 22

# TABLE OF AUTHORITIES

*<u>Cases</u>*:

*Adams v. Howerton*,
    486 F. Supp. 1119 (C.D. Cal. 1980) ...............................................................................11

*Andersen v. King County*,
    158 Wash.2d 1 (Wash. 2006) ........................................................................................14

*Baker v. Nelson*,
    409 U.S. 810 (1972)........................................................................................................10

*Banco Popular de Puerto Rico v. Greenblatt*,
    964 F.2d 1227 (1st Cir. 1992)...................................................................................15, 17

*Citizens for Equal Protection v. Bruning*,
    455 F.3d 859 (8th Cir. 2006) ........................................................................................14

*Clinton v. City of New York*,
    524 U.S. 417 (1998)....................................................................................................7, 14

*Conaway v. Dean*,
    401 Md. 219 (Md. 2007 ................................................................................................14

*Daggett v. Commission on Governmental Ethics and Election Practices*,
    172 F.3d 104 (1st Cir. 1999).................................................................................4, 19, 20

*Flast v. Cohen*,
    392 U.S. 83 (1968).........................................................................................................18

*Gill v. Office of Personnel Management*,
    699 F. Supp. 2d 374 (D. Mass. 2010) ..................................................................3, 12, 14

*Golden v. Zwickler*,
    394 U.S. 103 (1969).......................................................................................................18

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
    445 U.S. 375 (1980).......................................................................................................18

*Hernandez v. Robles*,
    7 N.Y.3d 338 (N.Y. 2006) ............................................................................................14

*In re Acushnet River & New Bedford Harbor*,
    712 F. Supp. 1019 (D. Mass. 1989) ..............................................................................19

*In re Kandu,*
    315 B.R. 123 (B.R. Wash. 2004) ...........................................................................8, 13, 14

*In re Marriage of J.B. and H.B.,*
    No. 05-09-01170-CV, 2010 WL 3399074 (Tex. Ct. App. Aug. 31, 2010) ......................14

*Int'l Paper Co. v. Town of Jay,*
    887 F.2d 338 (1st Cir. 1989) ........................................................................................19

*Karcher v. May,*
    484 U.S. 72 (1987) .........................................................................................................6

*Liljeberg v. Health Services Acquisition Group,*
    486 U.S. 847 (1988)......................................................................................................19

*Lockyer v. City and County of San Francisco,*
    95 P.3d at 504 (2004)....................................................................................................11

*Maine v. Taylor,*
    477 U.S. 131 (1986).......................................................................................................6

*Massachusetts v. U.S. Department of Health and Human Services,*
    698 F. Supp. 2d 234 (D. Mass. 2010) ...........................................................................3

*McConnell v. Nooner,*
    547 F.2d 54 (8th Cir. 1976) .........................................................................................11

*Morrison v. Sadler,*
    821 N.E.2d 15 (Ind. App. 2005) ..................................................................................14

*Munoz Vargas v. Romero Barcelo,*
    532 F.2d 765 (1st Cir. 1976)........................................................................................11

*Nextel Communications of the Mid-Atlantic, Inc. v. Town of Hanson,*
    311 F. Supp. 2d 142 (D. Mass. 2004) ...........................................................................9

*Planned Parenthood of Central New Jersey v. Attorney General of New Jersey,*
    297 F.3d 253 (3d Cir. 2002)...........................................................................................6

*Public Citizen v. Liggett Group, Inc.,*
    858 F.2d 775 (1st Cir. 1988)...........................................................................15, 16, 17

*Public Service Company of New Hampshire v. Patch,*
    136 F.3d 197 (1st Cir. 1998)..........................................................................................4

*R & G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*,
    584 F.3d 1 (1st Cir. 2009) ...................................................................................16

*Raines v. Byrd*,
    521 U.S. 811 (1997) ...........................................................................................7

*Smelt v. Orange County*,
    374 F. Supp. 2d 861 (C.D. Cal. 2005) ...................................................8, 13, 14

*Standhardt v. Superior Court ex rel. County of Maricopa*,
    206 Ariz. 276 (Ariz. App. 2003) .......................................................................14

*Travelers Indemnity Co. v. Dingwell*,
    884 F.2d 629 (1st Cir. 1989) ..............................................................................4

*United Airlines v. McDonald*,
    432 U.S. 385 (1977) ....................................................................................15, 16

*United Nuclear Corp. v. Cannon*,
    696 F.2d 141 (1st Cir. 1982) ..............................................................................9

*United States v. Metropolitan District Commission*,
    679 F. Supp. 1154 (D. Mass. 1988) ..................................................................17

*Wilson v. Ake*,
    354 F. Supp. 2d 1298 (M.D. Fla. 2005) ...............................................8, 11, 13, 14

## *Statutes and Legislative History*:

1 U.S.C. § 7 .................................................................................................................2

28 U.S.C. § 530D(a)(1)(B)(ii) ...............................................................................5, 15

28 U.S.C. § 530D(a)(2)(b)(2) ..................................................................................3, 5

28 U.S.C. § 530D(a)(2)(C) ..........................................................................................5

H.R. Rep. No. 104-664, *reprinted in* 1996 U.S.C.C.A.N 2905 ..................................11

## *Rules*:

Fed. R. Civ. P. 24(a)(2) ...............................................................................................4

Fed. R. Civ. P. 24(b) .................................................................................................19

**_Other Authorities_:**

Professor Richard A. Epstein, *Judicial Offensive Against Defense of Marriage Act*, Forbes.com, July 12, 2010, *available at* http://www.forbes.com/2010/07/12/gay-marriage-massachusetts-supreme-court-opinions-columnists-richard-a-epstein.html ...................2

## INTRODUCTION

Few cases have more need for an intervenor than this one.  Indeed, since it appears that the parties are not truly adverse, the case may not even be justiciable without someone like Representative Smith intervening.  That is because the DOJ's current DOMA defense, which happens to fit the current Administration's policy preferences, is really no defense at all.  And perhaps worse, it is totally unrecognizable from its past successful DOMA defenses.

A quick comparison proves the point.  The DOJ had successfully defended DOMA in federal courts in Florida, California, and Washington.  In each of those successful cases, the DOJ argued that the Supreme Court's decision in *Baker v. Nelson* was binding precedent that DOMA is constitutional.  And at least one court—the district court in Florida—agreed, finding that *Baker* was dispositive.   But in this case the DOJ did not even cite *Baker* in any of its briefs.

Moreover, in each of the past successful cases the DOJ also argued that the rationales that Congress used to support DOMA were "plainly" and "manifestly" legitimate.  It now expressly disavows them.   But the DOJ had good reason to call Congress' interests "plainly" and "manifestly" legitimate in past DOMA cases: one or all of them have now been adopted to support the opposite-sex definition of marriage by the Eighth Circuit Court of Appeals, at least three federal district courts, and at least seven state supreme or appellate courts.  We can state the point even more plainly—every court that has ever upheld the opposite-sex definition of marriage has done so based on at least one of those rationales.

Under the new Administration, which strongly supports DOMA's repeal, the DOJ traded these winning rationales for anemic arguments never recognized by any court in a challenge to DOMA or a similar state marriage definition.  This new DOMA "defense" has left even some same-sex marriage supporters scratching their heads.  As one prominent law professor recently observed, "it looks almost like collusive litigation, unless some true defender of DOMA is

allowed, as an intervener, to defend the statute on the merits.  As a supporter of gay marriage, I still think that the DOJ's faint-hearted advocacy is no way to run a legal system."[1]  The DOJ's faint-hearted advocacy is especially alarming here because people have the right to rely on the government to make a good defense of laws passed by their congressional representatives.  And indeed, a bedrock principle of our legal system is that the parties must have concrete, adverse interests for the case to be justiciable.

Representative Lamar Smith's intervention will provide that defense and the adversity of interest that the case currently lacks.  He was one of the congressional representatives who overwhelmingly voted for DOMA and has been a vociferous supporter of it ever since.  But even more importantly, he is among only a handful of legislators who the DOJ must notify if it intends *not* to defend or appeal a case involving a federal statute's constitutionality.  The explicit purpose for that notice is to give congressional members an opportunity to intervene to defend or appeal the law in the DOJ's absence.  By failing to give timely notice that the DOJ does not intend to appeal the case, the Attorney General has already impaired Representative Smith's substantial interest in ensuring that congressional legislation is adequately defended.

The DOJ's practical abdication of its own proven legal arguments, plus its ambivalence on whether it will even appeal, warrants intervention to ensure that widely supported Congressional legislation like DOMA receives a fair and vigorous defense.  Therefore, the Court should grant Representative Smith's motion to intervene.

## BACKGROUND

This case involves a challenge to DOMA's Section 3, which restricts federal marriage benefits to a union between a man and a woman.  1 U.S.C. § 7.  This Court held on July 8, 2010,

---

[1] Professor Richard A. Epstein, *Judicial Offensive Against Defense of Marriage Act*, Forbes.com, July 12, 2010, *available at* http://www.forbes.com/2010/07/12/gay-marriage-massachusetts-supreme-court-opinions-columnists-richard-a-epstein.html.

that Section 3 exceeded Congress' authority under the Spending Clause and violated the Tenth Amendment. *Massachusetts v. U.S. Department of Health and Human Services*, 698 F. Supp. 2d 234 (D. Mass. 2010). On the same day, the Court issued its opinion in *Gill v. Office of Personnel Management*, 699 F. Supp. 2d 374 (D. Mass. 2010), finding that DOMA also violated the equal protection principles of the Fifth Amendment's Due Process Clause. Representative Smith has filed a substantively identical motion to intervene and legal memorandum in that case as well.

On August 12, 2010, the Court issued a judgment in this case. (Docket No. 63.) On August 24, the Court granted the parties' joint request for a stay pending appeal. (Docket No. 66.) Thus, the government has until October 12, 2010, to file a notice of appeal. On August 9, 2010, Representative Smith, in his capacity as ranking minority member of the House Judiciary Committee, sent a letter to the Attorney General asking whether he intended to appeal both this case and *Gill*. (Motion Exhibit 1.) Such notice to Congressional leadership, including Representative Smith, is required under 28 U.S.C. § 530D. The DOJ responded in a letter dated September 3, 2010, noting that it had not yet decided whether to appeal the case. (Motion Exhibit 2.) The letter also claims that if the DOJ decides not to appeal, it will give notice to Congressional leadership, pursuant to § 530D. Section 530D, however, requires *timely* notice so that Congress can intervene to defend a law and appeal an adverse decision if the DOJ refuses to. 28 U.S.C. § 530D(a)(2)(b)(2). Under any reasonable reading of the statute, the DOJ's opportunity to give timely notice has long-since expired, since a notice of appeal must be filed by October 18, 2010, and Congress is now out of session.

**ARGUMENT**

**I.      Representative Smith Is Entitled to Intervention As of Right.**

To be entitled to intervention as a matter of right, prospective intervenors must: (1) have an interest relating to the property or transaction that is the subject of the action, (2) show a risk

that the action may impair his ability to protect his interest, (3) lack adequate representation by

existing parties, and (4) file a timely motion.  Fed. R. Civ. P. 24(a)(2); *Travelers Indem. Co. v.

Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).[2]  Courts in the First Circuit do not simply apply

these factors mechanically.  Rather, "[t]he application of this framework to the divers factual

circumstances of individual cases requires a holistic, rather than reductionist approach.  The

inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they be read not

discretely, but together, and always in keeping with a commonsense view of the overall

litigation." *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)

(citations omitted).  Representative Smith meets each of these factors.

### A.     Representative Smith Has a Significant Protectable Interest in a Reasonably Vigorous Defense of DOMA.

Representative Smith must show that he has a protectable interest that is threatened by

the litigation.  *Daggett v. Comm'n on Governmental Ethics and Election Practices*, 172 F.3d

104, 110 (1st Cir. 1999).  While the interest necessary to support intervention is similar to the

"injury-in-fact" element of Article III standing, the First Circuit has not required that intervenors

have standing.  *Id.* at 109.  The First Circuit has also resisted a narrow, elemental application of

Rule 24(a) and instead required that each of the individual elements should "be read not

discretely, but together, and always in keeping with a commonsense view of the overall

litigation." *Patch*, 136 F.3d at 204.

Here, Representative Smith, as ranking minority member on the House Judiciary

Committee, has a particularized, protectable interest to see that Congress' laws are fully

---

[2] The First Circuit has sometimes essentially condensed the first and second prongs into the same inquiry, asking whether the proposed intervenor has a threatened "protectable interest."  *See, e.g, Daggett v. Comm'n on Governmental Ethics and Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999) (considering both elements nearly simultaneously); *Public Service Co. of NH v. Patch*, 136 F.3d 197, 206 (1st. Cir. 1998). Therefore, that framework follows.

4

defended and that adverse decisions are appealed, as recognized by 28 U.S.C. § 530D.  That law requires that the Attorney General give timely notice to congressional leaders, including Representative Smith, if the DOJ will not appeal an adverse decision.  Specifically, 28 U.S.C. § 530D(a)(1)(B)(ii) requires that "[t]he Attorney General shall submit to the Congress a report of any instance in which the Attorney General or any officer of the Department of Justice" determines "not to appeal or request review of any judicial, administrative, or other determination adversely affecting the constitutionality of any such provision [of Federal law]."  The report must be served on the congressional leadership, including Representative Smith as "the ranking minority member of the Committee on the Judiciary of the House of Representatives."  28 U.S.C. § 530D(a)(2)(C).  And the Attorney General must submit the report within such time as will "reasonably enable" Congress "to intervene in timely fashion in the proceeding."  28 U.S.C. § 530D(a)(2)(b)(2).

Section 530D does not just require the Attorney General to give notice so that those Congressmen can be informed; it requires notice so that they can do something about it.  Where the Attorney General is not going to defend or appeal a case, congressional leaders have the option—if not the duty—to intervene.  Otherwise, § 530D's requirement would be worthless.  Thus, § 530D protects Congress' institutional authority and legislative role, which is specifically vested in Representative Smith's office as part of the congressional leadership.

Here, Representative Smith sent the Attorney General a letter on August 9, 2010, requesting assurances that the DOJ would appeal the DOMA cases.  (Motion Exhibit 1.)  On September 3, the DOJ responded that it had still not decided whether it will appeal the cases, but that it will notify Congress when the decision is made.  (Motion Exhibit 2.)  Considering the length of time since these cases were decided, it is difficult to understand the DOJ's indecision.

It is even more difficult to understand why, if the DOJ is not going to appeal, the Attorney General has failed to file a timely report under § 530D so that Congress would have the opportunity to intervene. Perhaps ideally Congress would have the opportunity to intervene as a body. But that is impossible in this case, since Congress is now out of session and the Attorney General never submitted his § 530D report.

Regardless, Representative Smith's status as a member of the congressional leadership entitled to notice under § 530D gives him an interest sufficient for intervention. That is especially critical in this case where the plaintiff has attacked DOMA's legislative purposes, while the DOJ has simply disavowed them. Representative Smith is in the best position to defend those legislative purposes as a member of the congressional leadership who supported DOMA and he has a special interest to do so as ranking minority chair of the judiciary committee. That interest is at least sufficient to satisfy Rule 24(a)'s requirements.[3]

Of course, even if the Attorney General eventually decides to appeal the case, Representative Smith still has a protectable interest in the litigation because the Attorney General is abdicating his duty to defend the voting interests of the Congressional majority. "In the federal system, the Attorney General defends the constitutionality of an act of Congress *whenever a reasonable argument can be made in defense of the act*." *Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 265 n.3 (3d Cir. 2002) (emphasis added) (citing "The Attorney General's Duty to Defend the Constitutionality of Statutes," 5 U.S. Op.

---

[3] Representative Smith's interest is also sufficient to give him standing under Article III. *Maine v. Taylor*, 477 U.S. 131, 136 (1986) (recognizing that "intervenors in lower federal courts may seek review in this Court on their own so long as they have a sufficient stake in the outcome of the controversy to satisfy the constitutional requirement of genuine adversity") (citation and quotation omitted); *see also Karcher v. May*, 484 U.S. 72, 75, 81-82 (1987) (recognizing that leadership of state legislature had standing to intervene and appeal when neither the Attorney General nor the named parties would defend statute).

Off. Legal Counsel 25, 1981 WL 30934). But that is not what the DOJ is doing here. As detailed fully below, the DOJ has clearly let the President's policy preferences dictate its litigation strategy and has abandoned all of its previously successful arguments. But congressional legislation—and especially legislation like DOMA that had broad bipartisan support—should receive a true defense rather than a hollow one designed to pacify political constituents.

This point has even more weight considering the significance of declaring a federal law unconstitutional. When a court is "asked to invalidate a statutory provision that has been approved by both Houses of Congress and signed by the President, particularly an Act of Congress that confronts a deeply vexing national problem, it should do so only for the most compelling constitutional reasons." *Clinton v. City of New York*, 524 U.S. 417, 447 n.42 (1998). Certainly the definition of marriage is a contentious and vexing issue right now in courts and legislatures throughout the country. Therefore, the decisions in this case deserve to be appealed and DOMA deserves a full defense. Representative Smith, as the ranking minority member of the House Judiciary Committee, has the interest and the will to do both.

The Supreme Court's decision in *Raines v. Byrd*, 521 U.S. 811 (1997), does not negate Representative Smith's right to intervene. There, the Supreme Court rejected a few legislators' attempt to challenge presidential authority because they failed to prove standing. *Id.* at 829-30. First, *Raines* dealt with a law that legislators had passed, but some of whom believed was unconstitutional. The clearest remedy was for the plaintiffs to convince their fellow legislators to change the law. In short, it was a case of sour apples, and the Court essentially found that the losers did not have standing to force the Court to fix their political failure. Second, the legislators in *Raines* had only a "wholly abstract and widely dispersed" claim that they shared with all other congressional representatives. *Id.* at 829.

Here, in contrast, DOMA passed with wide, bipartisan margins and Representative Smith is not proposing that the Court do something that he was politically unable to do, as in *Raines*. Rather, Representative Smith seeks to *defend* a statute that was passed and signed into law, but the defense of which has been essentially abandoned. As recognized by § 530D, he has a particular interest to ensure that the case is appealed and adequately defended lest DOMA's defense be nullified by the Attorney General. In short, *Raines* did not involve the sort of constructive pocket veto by the executive branch that is presented here. Thus, *Raines* has no bearing on Representative Smith's intervention motion.

**B.    The DOJ Is Not Adequately Defending Representative Smith's Interests.**

Perhaps the strongest reason for granting intervention in this case is that the Department of Justice is not adequately defending DOMA nor adequately representing Representative Smith's interests. The present Administration disagrees with DOMA as a matter of policy, believes it is discriminatory, and supports its repeal. The DOJ made this point as plain as possible on the first page of its opening brief. "As the President has stated previously, this Administration does not support DOMA as a matter of policy, believes that it is discriminatory, and supports its repeal." (Defs.' Br. Mot. Dismiss, at 1 (Docket No. 17).) Worse, the DOJ "expressly disavowed any reliance on the purported interests set forth in DOMA's legislative history." (Defs.' Reply Br. Mot. Dismiss, at 16 (Docket No. 47) (emphasis added).)

But this new "defense" of DOMA is a novel approach for the DOJ. In recent years, the DOJ has successfully defended DOMA in several jurisdictions. *See, e.g., Wilson v. Ake*, 354 F. Supp. 2d 1298 (M.D. Fla. 2005); *Smelt v. Orange County*, 374 F. Supp. 2d 861 (C.D. Cal. 2005); *In re Kandu*, 315 B.R. 123 (B.R. Wash. 2004). As discussed in more detail below, it did so based on arguments that other courts found persuasive in cases involving challenges to the opposite-sex definition of marriage. And most relevant here, it did so in defense of the reasons

8

for which Congress passed the law: channeling opposite sex procreation into enduring unions where children are raised by their married mother and father.

Thus, considering the DOJ's lackluster DOMA defense, Representative Smith easily passes the First Circuit's low hurdle to show inadequate representation. "This burden is not onerous: the intervenor need only show that 'representation *may* be inadequate, not that it *is* inadequate.'" *Nextel Commc'ns of the Mid-Atlantic, Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 151 (D. Mass. 2004) (quoting *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)). When the government is a party, "the intervenor must go further and provide a 'strong affirmative showing'" that the representation may be inadequate. *Id. (quoting Patch*, 136 F.3d at 207). Representative Smith could not make a stronger affirmative showing of inadequacy where the government defender here has disavowed its own proven arguments to support DOMA.

Generally, courts evaluate a three-part test to determine adequacy of representation: "(1) Are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is that present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?" *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) (citation omitted).

Obviously, if the DOJ does not appeal it will make no legal argument that Representative Smith would and it clearly would not be willing or able to do so. Even if DOJ does appeal, however, Representative Smith will advance at least two arguments that the DOJ is not willing to make, in addition to arguing that Congress had authority to enact DOMA in the first place.

Those two arguments are: 1) that the Supreme Court's decision in *Baker v. Nelson* is controlling precedent in this case; and 2) that DOMA is rationally related to the government's interest in channeling opposite sex procreation into enduring unions in which children are raised by their married mother and father.  We address each argument in turn.

> **1.      Representative Smith will argue—as the DOJ has in past cases—that the Supreme Court's decision in *Baker v. Nelson* controls this case.**

Representative Smith did not invent the argument that the Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972), is controlling federal precedent that DOMA is constitutional.  Rather, it is an argument previously advanced by the DOJ, successfully.  But, remarkably, the DOJ failed to even cite *Baker* in this case.

In past cases, the DOJ persistently argued that *Baker* binds federal courts considering challenges to DOMA.  *Baker* dismissed "for want of a substantial federal question" an appeal from the Supreme Court of Minnesota rejecting a same-sex couple's claim that the State's denial of their request to marry violated the Fourteenth Amendment.  The Court's dismissal for "want of a substantial federal question" was a decision on the merits, which binds all lower federal courts.  As the DOJ explained to a federal district court in Florida:

> Plaintiffs' due process and equal protection claims are controlled by *Baker v. Nelson*, a decision of controlling precedential effect by virtue of the Supreme Court's dismissal of an appeal in the case. . . .
> *Baker* is binding and dispositive here.  As the Supreme Court has explained, a dismissal for want of a substantial federal question is a decision on the merits. . . .  Accordingly, *Baker* definitively establishes that neither the Due Process Clause nor the Equal Protection Clause bars the States from limiting marriage to one man and one woman.  Necessarily, therefore, *Baker* also definitively establishes that the federal government may incorporate the traditional opposite-sex definition of marriage for purposes of federal statues, and may protect the States' ability to continue using that definition.  **This precedent is binding on the federal courts.**

Defs.' Br. Mot. Dismiss, at 5, *Wilson*, 354 F. Supp. 2d 1298 (No. 8:04-cv-01680) (Docket No. 39) (emphasis added).

The district court in *Wilson* agreed. "*Baker v. Nelson* is binding precedent upon this Court and Plaintiffs' case against [DOMA] must be dismissed." *Wilson*, 354 F. Supp. 2d at 1304-1305. Other courts have come to the same conclusion that *Baker* forecloses federal challenges to the opposite-sex definition of marriage. *McConnell v. Nooner*, 547 F.2d 54, 56 (8th Cir. 1976); *Adams v. Howerton*, 486 F. Supp. 1119, 1124 (C.D. Cal. 1980); *see also Lockyer v. City and County of San Francisco*, 95 P.3d 459, 504 (Cal. 2004) (Kennard, J., concurring in part and dissenting in part).

Yet, even though the DOJ considers *Baker v. Nelson* controlling, precedential authority that is dispositive of the issues in this case, it failed to even cite it anywhere in its briefing to this Court. Representative Smith will fully and vigorously argue *Baker* on appeal.

> **2.     Representative Smith will argue that DOMA is rationally related to Congress' interests in channeling procreative relationships into stable unions that consist of both a mother and a father.**

Representative Smith will also argue that DOMA is justified by the Government's interest in "responsible procreation," which is the interest in channeling procreative relationships into stable, enduring unions for the sake of producing and raising the next generation. Second, he will argue that DOMA supports the government's interest in promoting the ideal that children are raised by both their married mother and father. These were the key bases that Congress cited in the legislative history for passing DOMA. H.R. Rep. No. 104-664, at 13 (1996), *reprinted in* 1996 U.S.C.C.A.N 2905, 2917.[4] Yet, the DOJ has expressly disavowed them here.

> In this case, the government does not rely on certain purported interests set forth in the legislative history of DOMA, including the purported interests in "responsible procreation and child-rearing" – that is, the assertions that (1) the

---

[4] While it is certainly true that it is not necessary to rely on legislative history to support a law and that the views and motives of individual legislators are irrelevant, *Munoz Vargas v. Romero Barcelo*, 532 F.2d 765, 766 (1st Cir. 1976), the DOJ has the duty to make every reasonable argument that supports a law. Much more so in this case considering the number of courts that have upheld DOMA and similar marriage laws based on Congress' primary justifications.

> government's interest in "responsible procreation" justifies limiting marriage to a union between one man and one woman, and (2) that the government has an interest in promoting the raising of children by both of their biological parents.

(Defs.' Br. Mot. Dismiss, at 30 n.16 (Docket No. 17); *see also* Defs.' Reply Br. Mot. Dismiss, at 16 (Docket No. 47) ("The defendants . . . have <u>expressly disavowed</u> any reliance on the purported interests set forth in DOMA's legislative history.") (emphasis added).)

Rather than making arguments that it had previously made successfully in DOMA's defense, the DOJ has trotted out a new set of rationales never accepted by any court in determining whether male-female marriage is constitutional. The DOJ's new arguments are that DOMA is rationally related to 1) maintaining the status quo pending resolution of the issue among the states and; 2) relieving federal agencies of the administration burden involved with a changing patchwork of state approaches to marriage. *Gill*, 699 F. Supp. 2d at 390, 395. This Court paid little heed to either argument. *Id.*

But like the DOJ's abandonment of *Baker v. Nelson*, this new position stands in stark contrast to the DOJ's previous defense of DOMA, where it called the interests in "responsible procreation" and promoting the ideal that children are raised by their biological mother and father as "manifestly" and "plainly legitimate."

> [B]oth section 2 and section 3 of DOMA are rationally related to the legitimate government interest in encouraging the development of relationships that are optimal for procreation. As the House Judiciary Committee explained, the benefits and obligations of marriage are rooted in 'the inescapable fact that only two people, not three, only a man and a woman, can beget a child.' H.R. Rep. No. 104-664, at 13, *reprinted in* 1996 U.S.C.C.A.N. at 2917. Congress could seek to encourage the creation of stable relationships in which people can securely procreate. To this end, marriage historically has provided an important legal and normative link between procreation and family responsibilities. [citation omitted]. **Congress's interest in encouraging responsible procreation is manifestly legitimate**. . . . In short, Congress has an interest in promoting heterosexual marriage because it has an interest in the stable generational continuity of the United States. . . .
> . . .

> . . .  **Congress reasonably concluded that children ideally should be raised by their biological parents, and DOMA is rationally related to Congress's plainly legitimate interests in encouraging the optimal social arrangements for procreation and childrearing.**"

Defs.' Br. Mot. Dismiss, at 15-16, *Wilson*, 354 F. Supp. 2d 1298 (No. 8:04-cv-1680) (Docket No. 39) (emphasis added); *see also* Def.-Intvr.'s Reply Mot. Summ. J., at 9-10, *Smelt v. United States*, 374 F. Supp. 2d 861 (No. SACV04-1042) (Docket No. 114) ("The *Goodridge* court's dismissal (and plaintiffs' dismissal here) of the procreative foundations of marriage ignores multiple historical and legal references to those foundations. . . .  These are <u>plainly legitimate</u> governmental interests, to which DOMA is rationally related.") (emphasis added).  Moreover, the DOJ recognized that this purpose was a part of DOMA's legislative history.  Defs.' Br. Mot. Dismiss, at 17, *Wilson*, 354 F. Supp. 2d 1298 (No. 8:04-cv-01680) (Docket No. 39) (quoting H.R. Rep. No. 104-664, at 14 n.50, *reprinted in* 1996 U.S.C.C.A.N. at 2918).

What is most surprising is that the DOJ has abandoned these arguments even though they were accepted by the courts to which it was making them.  *See Smelt*, 374 F. Supp. 2d at 880 ("Encouraging the optimal union for rearing children by both biological parents is . . . a legitimate purpose of government."); *Wilson*, 354 F. Supp. 2d at 1309 (recognizing that the Eleventh Circuit found that "encouraging the raising of children in homes consisting of a married mother and father is a legitimate state interest") (citing *Lofton v. Sec. of Dep't of Children and Fam. Servs.*, 358 F.3d 804, 819-20 (11th Cir. 2004)); *In re Kandu*, 315 B.R. 123, 146-48 (Bankr. W.D. Wash. 2004) ("the promotion of marriage to encourage the maintenance of stable relationships that facilitate to the maximum extent possible the rearing of children by both of their biological parents is a legitimate congressional concern.").

And in fact, most of the courts that have considered whether the definition of marriage as a union between a man and woman is constitutional have ultimately found these rationales

persuasive.[5]   The DOJ's dismissal of them deprives Congressional legislation of fair representation, and deprives the Court the full benefit of the adversarial process.   Thus, the plaintiff was able to level an unopposed attack against DOMA's strongest purposes while government conceded the issues away.   *Gill*, 699 F. Supp. 2d at 388.   The Court then ruled on those rationales even though it had no one to counter the plaintiff's arguments.

There is no reasonable explanation why the DOJ would abandon such widely accepted arguments, but for the President's policy preferences.   It is clear, then, that the DOJ considers the President its client, not Congress.   When the client changed, so did the DOMA's defense.   But "the power to enact statutes may only be exercised in accord with a single, finely wrought and exhaustively considered, procedure."   *Clinton*, 524 U.S. at 439-40 (quotations and citation omitted).   Therefore, congressional legislation should receive the benefit of a fair, consistent, and vigorous defense, regardless of who is in office as president.   But if the DOJ refuses to provide it because of the current administration's policy preferences, then the Congressional members that voted for the statute and are charged with ensuring its defense (specifically Representative Smith in this case) should be allowed to intervene.

### C.   Representative Smith's Motion to Intervene Is Timely.

Motions to intervene are not untimely simply because they are filed post-judgment.   In fact, they are not even very rare.   "It is also important to note that postjudgment intervention is not altogether rare. . . .   It is now well-established that it is not the simple fact of knowing that a

---

[5] *See, e.g., Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 868-69 (8th Cir. 2006); *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1309 (M.D. Fla. 2005); *Smelt v. Orange County*, 374 F. Supp. 2d 861, 880 (C.D. Cal. 2005); *In re Kandu*, 315 B.R. 123, 146 (Bankr. W.D. Wash. 2004); *Andersen v. King County*, 158 Wash.2d 1, 10 (Wash. 2006); *Conaway v. Dean*, 401 Md. 219, 319 (Md. 2007); *Hernandez v. Robles*, 7 N.Y.3d 338, 359, 375 (N.Y. 2006); *Morrison v. Sadler*, 821 N.E.2d 15, 25 (Ind. App. 2005); *Standhardt v. Superior Court ex rel. County of Maricopa*, 206 Ariz. 276, 287-88 (Ariz. App. 2003); *In re Marriage of J.B. and H.B.*, No. 05-09-01170-CV, 2010 WL 3399074, slip op. at 32-33 (Tex. Ct. App. Aug. 31, 2010).

litigation exists that triggers the obligation to file a timely application for intervention.  Rather, the appropriate inquiry is when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties."  *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 785 (1st Cir. 1988).  There is no bright-line rule delineating when a motion to intervene is timely.  *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992). "Instead, courts must decide the question on a case by case basis, examining the totality of the relevant circumstances."  *Id.*  Intervention motions made to appeal a decision are usually considered timely if filed within the timeframe for appeal if the prospective intervenor learns that a party may not appeal the case.  *United Airlines v. McDonald*, 432 U.S. 385, 395-96 (1977).

### 1.   Post-judgment intervention is timely when filed for the purpose of appeal.

Representative Smith's motion is timely because it is solely for the purpose of appeal.  At this point, it is far from clear that the DOJ will appeal.  As noted above, the Attorney General is required to give timely notice to Congressional leadership if he is not going to appeal an adverse decision.  28 U.S.C. § 530D(a)(1)(B)(ii).  Even though this case was decided on July 8, 2010, the DOJ has refused to state anything more than that it is evaluating the opinion and has not made a decision whether to appeal.  And an appeal looks increasingly uncertain since the DOJ has still not affirmed that it will appeal the case with barely a week left before the 60 day window for appeal expires.   Thus, one of the reasons Representative Smith is moving to intervene is simply to appeal this court's decision.

Intervention for the purpose of appeal is not uncommon.  The relevant question for timeliness is when the party learned that his interests would not be adequately represented or that the current party would not appeal.  The Supreme Court has been clear on this point:

> Our conclusion is consistent with several decisions of the federal courts permitting post-judgment intervention for the purpose of appeal. The critical

inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.  Here, the respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal.  We therefore conclude that the Court of Appeals was correct in ruling that the respondent's motion to intervene was timely filed and should have been granted.

*United Airlines v. McDonald*, 432 U.S. 385, 395-96 (1977) (citation omitted).   Here, Representative Smith is well-within the 60 day window to file a notice of appeal, and his motion is therefore timely.

> **2.      Representative Smith believed that the DOJ would vigorously represent his interests, as it has so many times in the past.**

Representative Smith's motion is also timely because he had no reason to believe that the DOJ would not adequately defend DOMA.  The same DOJ has litigated each of the various cases challenging DOMA over the years, and has done so successfully.  As noted above, in each of those cases, the DOJ argued in support of the policy reasons that Congress cited in passing the law—namely, that DOMA is rationally related to the government's interest in "responsible procreation" and promoting the ideal that children are raised by a married mother and father. Representative Smith was surprised to learn that the DOJ's arguments had so drastically changed.  He had no notice that the DOJ was changing its strategy and completely disavowing Congress' interests until the case was decided.

Thus, Representative Smith's motion to intervene to defend DOMA on appeal is timely. *Public Citizen*, 858 F.2d at 785 (timeliness determined from when potential intervenor knew interests were not being adequately represented).

> **3.      Representative Smith's intervention will not prejudice any party.**

Other factors courts consider regarding timeliness are whether there is prejudice to existing parties if intervention is allowed or prejudice to the intervenor if intervention is denied. *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009).

Determining whether there is prejudice "encompasses the basic fairness notion that intervention should not work a 'last minute disruption of painstaking work by the parties and the court.'" *Public Citizen*, 858 F.2d at 786 (quoting *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980)). Post judgment intervention is much less likely to prejudice existing parties when it does not seek to disturb the underlying judgment. *Id.* at 786; *Banco Popular de Puerto Rico*, 964 F.2d at 1232 ("As a general rule, prejudice to existing parties is less likely in a case where post-judgment intervention does not seek to disturb the core judgment . . . ."); *see also United States v. Metro. Dist. Comm'n*, 679 F. Supp. 1154, 1161 (D. Mass. 1988) ("[I]ntervention which is solely prospective does not prejudice the current parties: this limited goal of future participation does not appear to impose any untoward burden on the original parties. . . .") (quotations omitted).

Here, Representative Smith's only purpose for intervention is to appeal the case and to argue in support of the legal rationales that Congress cited to pass DOMA. As noted, the Plaintiff attacked Congress' rationales, but the DOJ did nothing but undermine them by expressly disavowing them. The Court then ruled against those rationales without the benefit of any opposing argument. Representative Smith will simply fulfill the function that the DOJ had previously filled in past DOMA cases by countering the Plaintiff's arguments. He does not propose to re-open discovery or that this Court reconsider the case. In fact, because this case involved only a straight forward legal question about whether DOMA is constitutional, there should be no disruption to the proceedings at all. Representative Smith only wants to ensure that his interests in fulfilling his responsibility to ensure that the constitutionality of federal laws is adequately represented on appeal, and that the Court of Appeals has the benefit of hearing a counter argument to the Plaintiff's attack against DOMA's well-founded purposes. Thus,

allowing Representative Smith to intervene poses no burden and causes no prejudice to the existing parties.

However, if Representative Smith is not allowed to intervene, congressional interests will not be represented at all, and in fact will continue to be explicitly disavowed. In short, Representative Smith will be prejudiced by a defense that accomplishes through litigation what the President has been unable to do through the political process.

## II.    Representative Smith Would Add the Necessary Adversity of Interest that the Case Currently Lacks.

An important reason to grant Representative Smith's motion to intervene is to ensure that the case has the necessary adversity of interest. Adversity of interests is necessary for a case to be justiciable. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy . . . to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). The purpose for Article III's case-or-controversy requirement is to "limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). "The clash of adverse parties 'sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'" *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 382-383 (1980) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Here, both the Administration and the Plaintiff seek the same goal—DOMA's end. When the DOJ refuses to give a statute a true defense and expressly disavows the interests that support it, the concreteness that is necessary for a sharp understanding of the constitutional issues is missing and the court is deprived of a true case or controversy. And public confidence

in the judicial process is eroded because some may perceive the case as a fix. *Liljeberg v. Health Services Acquisition Group*, 486 U.S. 847, 864 (1988) ("We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice.") (quotations and citation omitted).  Here, as Professor Epstein implicitly recognized, it is plainly obvious to the reasonable observer that the President's policy preferences and political considerations have guided the DOJ's litigation efforts.[6]  So even if the Court does not believe that the lack of true adversity presents an Article III problem, at the very least judicial prudence dictates that the case should have parties that are truly adverse so that these important issues can be fairly and sharply litigated.  Granting Representative Smith's motion to intervene will remedy that current defect in the case.

## III.    Permissive Intervention Is Also Appropriate for the Same Reasons.

Even if the Court believes that Representative Smith does not meet the criteria for intervention as of right, it should nonetheless permit Representative Smith to intervene under Fed. R. Civ. P. 24(b).  (giving the court discretion to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact").  "[P]ermissive intervention ordinarily must be supported by independent jurisdictional grounds." *Int'l Paper Co. v. Town of Jay*, 887 F.2d 338, 346 (1st Cir. 1989).  As noted above, Representative Smith's strong interest in defending DOMA as part of the congressional leadership gives him standing in the case.  *See supra* note 3.

Otherwise, "the district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [for permissive intervention]." *Daggett*, 172 F.3d at 113; *see also In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1023 (D. Mass. 1989) (considering similar factors for permissive intervention as

---

[6] *See,* Epstein, *supra* note 1.

intervention as of right). The same reasons that support Representative Smith's motion to intervene as of right support permissive intervention under Rule 24(b), especially considering that strong arguments in defense of DOMA have not been fairly presented to the Court. *Daggett*, 172 F.3d at 113 ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention.").

## CONCLUSION

The DOJ has set its course in this case and there is little hope that it will change it. Assuming the case is even appealed (which is far from certain), the Plaintiff will continue to attack DOMA's purposes, the DOJ will continue to disavow those purposes, and the appellate court will need to rule on them. The only question is whether there will be a party in the case to counter the Plaintiff's arguments.

If the Court grants Representative Smith's motion to intervene, he can fulfill his Constitutional and statutory interests to appeal the case and fully defend DOMA and its well-grounded purposes, as well as Congress' authority to enact DOMA. His participation will also provide the adversity of interest that the case lacks and alleviate the potential scandal of having a statute struck down that never received a fair defense. And, importantly, his intervention will not make the litigation more complex or prejudice any party. Thus, Representative Smith respectfully requests that the Court grant his motion to intervene.

Respectfully submitted this the 5th day of October, 2010.

By:/s/ Philip D. Moran
 Philip D. Moran, MA Bar No. 353920
 265 Essex Street, Suite 202
 Salem MA 01970
 (978) 745-6085; (978) 741-2572 Fax
 philipmoranesq@aol.com

 Dale Schowengerdt,* AZ Bar No. 022684
 Alliance Defense Fund
 15192 Rosewood
 Leawood, KS 66224
 (913) 685-8000; (480) 444-0028 Fax
 dale@telladf.org

 Brian W. Raum, * NY Bar No. 2856102
 Byron J. Babione,* AZ Bar No. 024320
 Alliance Defense Fund
 15100 N. 90th Street
 Scottsdale, AZ 85260
 (480) 444-0020; (480) 444-0028 Fax
 braum@telladf.org
 bbabione@telladf.org

 *Attorneys for Proposed Intervenor-Defendant*

 *\*Pro Hac Vice motion pending*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2010, I electronically submitted the foregoing

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

of Electronic Filing to the following CM/ECF registrants:

MAURA T. HEALEY
JONATHAN B. MILLER
CHRISTOPHER K. BARRY-SMITH
JESSICA LINDEMANN
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-2200
Fax: (617) 727-5762
Maura.Healey@state.ma.us
Jonathan.Miller@state.ma.us
Cbarry-Smith@state.ma.us
Jessica.Lindemann@state.ma.us

COUNSEL FOR PLAINTIFF

TONY WEST
Assistant Attorney General
CARMEN M. ORTIZ
United States Attorney
ARTHUR R. GOLDBERG
Assistant Director
CHRISTOPHER R. HALL
D.C. Bar No. 468827
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box
Washington, D.C. 20044
Telephone: (202) 514-4778
Facsimile: (202) 616-8470
Christopher.Hall@usdoj.gov

COUNSEL FOR DEFENDANTS

s/ Philip D. Moran
Philip D. Moran
265 Essex Street, Suite 202
Salem MA 01970
(978) 745-6085; (978) 741-2572 Fax
philipmoranesq@aol.com